```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
ALBERT E. ISERNIO,

                Petitioner,

        -against-                       MEMORANDUM & ORDER
                                        05-CV-4630(JS)
UNITED STATES OF AMERICA,               05-CV-4631(JS)

                Respondent.
----------------------------------X
APPEARANCES:

For Petitioner:         John R. Wing, Esq.
                        Lankler, Siffert & Wohl LLP
                        500 Fifth Avenue, 33rd Floor
                        New York, New York 10110

For Respondent:         Peter Alfred Norling, AUSA
                        United States Attorneys' Office
                        147 Pierrepont Plaza
                        Brooklyn, New York 11201
```

SEYBERT, District Judge:

### **INTRODUCTION**

On November 29, 2005, Petitioner Albert E. Isernio ("Petitioner") filed this Petition to vacate and correct his custodial sentence pursuant to 28 U.S.C. § 2255. Petitioner essentially challenges his sentence as unconstitutional and in excess of the maximum authorized by law. For the reasons below, the Court DENIES the Petition.

### **BACKGROUND**

On January 27, 2004, after a jury trial, Petitioner entered into a plea agreement with the United States, pleading guilty to one count of conspiracy to commit bribery and mail fraud

and one count of conspiracy to commit money laundering. According to the plea agreement, these offenses constituted a "group of closely related counts" for sentencing guideline purposes.

The plea agreement provided that the money laundering conspiracy count was subject to a total adjusted sentencing level of 29. Subsequently, Petitioner and the Government agreed that the total adjusted level was three levels too high; the Petitioner, Government, and the Court adjusted the overall level from 29 to 26. The bribery and fraud conspiracy was subject to a total adjusted sentencing level of 24.

Prior to sentencing, the Government asked that the Court apply two new enhancements based upon (1) Petitioner's role in the offense and (2) unrelated offense non-grouping. These two enhancements raised the sentencing level on the bribery and fraud conspiracy count from Level 24 to Level 29. On the money laundering conspiracy count, the enhancements raised the sentencing level from 26 to 28. Petitioner objected to these enhancements.

The Court ultimately sentenced Petitioner to 87 months of incarceration on the money laundering conspiracy count. This length of time was at the lower end of the range of imprisonment the Court could have imposed for a Level 29 sentence, which carries a range of imprisonment from 87-108 months. The Court sentenced Petitioner to a 60-month concurrent term for the bribery and fraud conspiracy count. This was below the range for a Level 26

2

sentence, which carries an imprisonment range of 63-78 months.

Petitioner moved to vacate his sentence on November 29, 2005. Petitioner's arguments are summarized as follows. First, Petitioner argues that the Court imposed an unconstitutional sentence because it contained enhancements that were neither elements of the offense found by a jury nor admitted by Petitioner. Second, the ex post facto and due process clauses prohibit this Court from imposing a sentence greater than the guideline range for a level 26 offense. Any sentence should be calculated only on the basis of facts proven to a jury beyond a reasonable doubt or admitted by a defendant. Third, Petitioner claims that the Government breached the plea agreement, and thus re-sentencing is required. Further, the breach of the plea agreement released Petitioner from any obligation to refrain from challenging his sentence. Fourth, Petitioner claims that he is entitled to re-sentencing for the same reasons his co-defendant, Mike Blake ("Blake"), received re-sentencing. Lastly, the Court should re-sentence Petitioner at the low end of Level 26 due to Petitioner's exceptional personal history and the unfair sentencing disparities between Petitioner and his co-defendants.

The Government opposes the Petition to vacate the sentence. First, the Government contends that the petition is procedurally infirm: Petitioner waived his right to challenge the conviction and Petitioner never raised these arguments on appeal.

Second, the law does not prohibit enhancements of a sentence; the law at the time of Petitioner's sentencing prohibited only factors that increased the statutory maximum. Lastly, the Government argues it did not breach the plea agreement, but even if it did, Petitioner would have received the same sentence, and thus any breach is inconsequential.

## **DISCUSSION**

I. <u>Petitioner Did Not Default Or Waive His Rights To Challenge.</u>

Before the Court can reach the merits of Petitioner's arguments, the Court must first determine whether Petitioner's waiver of his right to challenge his sentence in the plea agreement binds Petitioner. The waiver in the plea agreement stated the following:

> The defendant will not file an appeal or otherwise challenge the conviction or sentence in the event that the Court imposes a term of imprisonment of 108 months or below. This waiver is binding on the defendant even if the Court employs a Guidelines analysis different from that set forth in paragraph 2 as long as the Court imposes a term of imprisonment of 108 months or below.

(Pet.'s Mot. Ex. A, ¶ 4.)

The Court ultimately sentenced Petitioner to 87 months of imprisonment. Clearly, this falls below a term of 108 months. Thus, according to the plain terms of the plea agreement, Petitioner appears to have waived his right to challenge his sentence. Petitioner, however, argues that the waiver does not

4

bind Petitioner because the Government had breached the plea agreement.

"In general, a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed guideline range is enforceable." United States v. Rosa, 123 F.3d 94, 97 (2d Cir. 1997). Waivers will not bind defendants, however, in certain circumstances: for instance, "if the Government breaches the terms of the plea agreement" or if a sentencing court bases the sentence upon a "constitutionally impermissible factor." Id. (citations omitted).

But before this Court analyzes whether the Government breached the plea agreement, the Court addresses one more issue: whether Petitioner should have raised any of these issues on appeal rather than in a motion to vacate pursuant to 28 U.S.C. § 2255. The Government argues that Petitioner failed to raise his claims on appeal, and such appellate default precludes his claims on a 2255 motion. (Opp. 13.) However, the Government also acknowledges that when a Petitioner claims that the Government breached the plea agreement, the Second Circuit has permitted 2255 motions despite the absence of an appeal. (Id. 17.) See United States v. Corsentino, 685 F.2d 48 (2d Cir. 1982); Paradiso v. United States, 689 F.2d 28, 30 (2d Cir. 1982) (per curiam); Urbaez v. United States, 92-CV-0791, 1992 U.S. Dist. LEXIS 12588 (E.D.N.Y. Aug. 13, 1992) (district court entertaining 2255 motion to vacate sentence

based on breach of plea agreement despite lack of appeal). In light of the Second Circuit's case law and the Government's acknowledgment of it, the Court finds that Petitioner did not lose his right to challenge the sentence for lack of appeal. The Court now moves on to the issue of whether the Government breached the plea agreement by urging the Court to apply two enhancements to Petitioner's sentence.

II. <u>The Government Did Not Breach The Plea Agreement.</u>

Petitioner argues that the Government breached the plea agreement because the two enhancements the Government endorsed to the Court were "outside the stipulated terms of the plea agreement." (Pet.'s Mem. 2.) The Government, however, contends that it did not breach the plea agreement because the agreement anticipated a sentence within Level 29, and that is what the Government advocated. (Opp. 23.) And in any event, the Petitioner still agreed to not challenge the sentence so long as the sentence did not exceed 108 months.

A plea must "be voluntary and knowing." <u>Urbaez</u>, 1992 U.S. Dist. LEXIS at *6 (citation omitted). When a plea "rests in any significant degree on a promise or agreement of the prosecutor, so that [the promise] can be said to be part of the inducement or consideration, such promise must be fulfilled." <u>Id.</u> (citations omitted). The plea agreement binds the Government, and due process requires the Government to act consistently with the terms of the

6

agreement.  See id. (citation omitted).

"To determine whether a plea agreement has been breached, we must determine what the parties to the plea agreement reasonably understood to be the terms of the agreement."  Id. at *6-*7 (quoting United States v. Casamento, 887 F.2d 1141, 1181 (2d Cir. 1989)).  In Casamento, the government promised not to recommend a proper sentence but then submitted "a sentencing memorandum detailing the allegations and evidence presented at trial as well as generalized suggestions on how to treat various codefendants." Id. at *7 (discussing Casamento).  The Second Circuit had found that the government breached the plea agreement when it "commented upon the nature of [the] crimes."  Id. (quoting Casamento).

In the Urbaez case in the Eastern District of New York, Judge Sifton found the government had breached the plea agreement. The parties agreed that the relevant quantity of heroin did not exceed 699 grams.  But the government had discovered that the amount was actually 1,680 grams.  The government then provided this information to the probation department and the court.  The Urbaez court found that this constituted a breach of the plea agreement. The court then went on to discuss the remedies for a breached plea agreement.  See id. at *12-*17.

In this case, the plea agreement stated the following regarding Petitioner's sentence:

The defendant's sentence is governed by the United States Sentencing Guidelines. The Office will advise the Court and the Probation Department of information relevant to sentencing, including criminal activity engaged in by the defendant, and such information may be used by the Court in determining the defendant's sentence. The Office estimates the likely adjusted offense level under the Sentencing Guidelines to be level 29, which is predicated on the following Guidelines calculation:

**COUNT 1- CONSPIRACY TO COMMIT BRIBERY**

| | |
|---|---|
| Base: Offense Level (2C1.7) | 10 |
| Plus: $7,500,000 Loss/Value of Proceeds | +14 |
| Plus: Obstruction of Justice enhancement | +2 |
| Less Acceptance of Responsibility (3E1.1) | -2 |
| Total Adjusted Level: | 24 |

**COUNT SEVENTEEN - MONEY LAUNDERING**

| | |
|---|---|
| Base: Offense Level (2S1.1) | 23 |
| Plus: Value of funds laundered ($2,199,000) | +6 |
| Plus: Obstruction of Justice enhancement (3C1.1) | +2 |
| Less Acceptance of Responsibility (3E1.1) | -2 |
| Total Adjusted Level: | 29 |

The defendant has previously been convicted, on January 21, 2004, after a jury trial on two counts of filing false tax returns in the years 1997 and 1998 and two counts of structuring for the years 1998 and 2000. The government estimates the sentencing guidelines range on those convictions as follows:

| | |
|---|---|
| Base: Offense Level (2T4.1) Tax Loss ($875,000) | 18 |
| Plus: 3C1.1 Obstruction of Justice enhancement | +2 |
| Total Adjusted Level: | 20 |

The parties agree that all of the above offenses constitute a group of closely related counts pursuant to USSG Section 3D1.2 for sentencing guidelines purposes. The parties agree that the adjusted offense applicable to

> Count 17 (level 29) is applicable to this group pursuant to USSG Section 3D1.3(a). This level carries a range of imprisonment of 87-108 months, assuming that the defendant falls within Criminal History Category I. The parties stipulate and agree to this Guidelines calculation. The defendant further agrees not to make a motion, or otherwise argue, for a downward departure from the guideline range of 87-108 months.

(Pet.'s Mot. Ex. A, ¶ 2.)

As already stated, the Court sentenced Petitioner to 87 months' imprisonment. This is the least amount to which the Court could have sentenced Petitioner for a Level 29 sentence. Thus, based on what was agreed upon and what sentence this Court ultimately rendered, the Petitioner received exactly what he should have reasonably expected under the plea agreement. Further, the parties agreed that the Government "estimate[d]" the Guidelines calculations and that the Probation Department would advise the Court of certain information that may be used to further determine Petitioner's sentence.

Petitioner, however, argues that the Government breached the plea agreement because it advocated certain enhancements that were not negotiated in the plea agreement. Specifically, the Government wrote a letter, dated September 20, 2004, in which the Government provided another set of Guidelines calculations: for Count 17, the Government agreed the proper sentencing level was level 26. For Count 1, the total offense level was 29 based on two enhancements: a three-point enhancement for role in the offense and

9

a two-point enhancement for unrelated offense non-grouping.

The Government had revised their calculations in response to the Probation Department's Pre-Sentence Report, in which the Department recommended a total offense level of 33. The Government realized that this was above what the plea agreement contemplated. The Government then made its sentencing recommendations as stated above with two enhancements not discussed in the plea agreement.

Petitioner argued that the new total offense level should have been 26 because at sentencing, the parties agreed Level 26 was proper for the money laundering conspiracy. The two enhancements were not contemplated in the plea agreement, and the Government should not have endorsed them to the Court for Petitioner's sentencing.

In two relevant Second Circuit cases, where the government had advocated for upward departures, the government had explicitly promised in the plea agreements not to argue for upward departures at sentencing. See United States v. Vaval, 404 F.3d 144 (2d Cir. 2005); United States v. Riera, 298 F.3d 128 (2d Cir. 2002). In Vaval, the Second Circuit found a breach because the plea agreement explicitly prohibited the government from seeking an upward departure or taking a position on an appropriate sentence within the Guidelines range. See Vaval, 404 F.3d at 153.

In contrast, the Riera court had found that the

government did not breach the plea agreement despite a promise to not seek an upward departure. See Riera, 298 F.3d at 134. The government in Riera had written a letter, advising the sentencing court that it had discretion to upwardly depart and provided details as to why an upward departure would be appropriate. The government, however, later emphasized to the Court that it was not advocating an upward departure. The Second Circuit reasoned that no breach occurred because the government was responding to the court's inquiries, the plea agreement provided that the government could do this, and the government had later reiterated that it was not advocating an upward departure. See id.

While both Vaval and Riera dealt with departures and this case deals solely with enhancements, the Second Circuit's reasoning helps this Court in its analysis of Petitioner's argument. The plea agreement in this case provides that the Government "will advise the Court and the Probation Department of information relevant to sentencing, including criminal activity engaged in by the defendant, and such information may be used by the Court in determining the defendant's sentence." (Pet.'s Mot. Ex. A, ¶ 2.)

The Court finds that the Government did not breach the plea agreement when it advocated a sentence at Level 29 based on two enhancements not discussed in the plea agreement. First, nothing in the plea agreement prohibits the Government from advocating these enhancements to the Court. The plea agreement

prohibited only upward departures and the Government's taking a position as to where within the Guidelines range the sentence should fall. Second, the plea agreement allowed the Government to provide the Court with information relevant to sentencing: specifically, Petitioner's criminal activity. Third, the sentence - even though based on two enhancements not contemplated by the plea agreement - was at Level 29, which was agreed to in the plea agreement. Thus, the parties reasonably expected that Petitioner would be sentenced at Level 29, and that is what Petitioner received. Lastly, Petitioner agreed not to challenge the sentence so long as he was sentenced to less than 108 months of imprisonment. And he received far less than that.

III. <u>Remedies For A Breached Plea Agreement</u>

Even if this Court found that the Government breached the plea agreement, the Court cannot grant Petitioner the relief he requests - a re-sentencing at Level 26. As discussed below, the consequences of a breached plea agreement are limited to certain remedies and in some cases, no remedies. Petitioner does not seek to withdraw his guilty plea, and enforcement of the plea agreement would lead only to a sentence at Level 29 - the same level under which he was sentenced.

Generally, "the remedy for a breached plea agreement is either to permit the plea to be withdrawn or to order specific performance of the agreement." <u>United States v. Palladino</u>, 347

F.3d 29, 34 (2d Cir. 2003) (internal quotation marks and citation omitted). "The choice between these remedies is generally a discretionary one guided by the circumstances of each case." Id. (internal quotation marks and citation omitted). "[N]ot every breach requires a remedy. Rather, the need for a remedy depends on the 'nature of the broken promise and the facts of each particular case.'" Id. (quoting United States v. Brody, 808 F.2d 944, 948 (2d Cir. 1986)).

The Second Circuit discussed the factors to analyze when deciding whether to remedy a breach and when certain remedies, like plea withdrawal and re-sentencing, may be appropriate. See id. at 154-56. Whether Petitioner was prejudiced is generally irrelevant. See id. When the curative performance exception applies, no remedy is necessary. That occurs when the government cures a breach by complying at a post-sentencing hearing. This exception does not apply here.

The "de minimis breach exception" - which is more relevant in this case - applies when "the violation is so minor that it does not cause the defendant to suffer any meaningful detriment." Id. at 155. To determine if a defendant "suffered a meaningful detriment," the court must look at "what the defendant reasonably understood to be the terms of the plea agreement, and whether his or her reasonable expectations [were] fulfilled." Id. In other words, was "the essential purpose of the agreement"

13

satisfied?  Id.

In a footnote, the Second Circuit provides a useful example of this exception.  See id. at 156, n.6.  In United States v. Paradiso, the plea agreement required the defendant's sentences on the counts of two separate indictments to run concurrently rather than consecutively.  This ensured that the sentence would be no longer than ten years, which was the maximum on one of the counts.  The court sentenced the defendant to eight years of imprisonment on one count of the first indictment and two years of probation on the single count of the second indictment.  The Second Circuit "upheld the sentence because it satisfied the purpose of the agreement -- to keep the defendant's sentence under 10 years." Id.

In this case, the Government's purported breach of the plea agreement would not require a remedy as the de minimis breach exception applies.  The plea agreement's purpose was to obtain a sentence at Level 29 and in any event, no longer than 108 months.  The plea agreement's purpose was met: Petitioner was sentenced at Level 29, and the Court sentenced him to 87 months of imprisonment.  Whether the sentence was based on enhancements for obstruction of justice or his role in the offense is of little import; Petitioner got what he bargained for - a sentence at Level 29 and no more than 108 months of imprisonment.  Any purported breach, thus, does not require a remedy.

IV. Apprendi Does Not Apply To Enhancements.

The only other way the Court may grant Petitioner the relief he seeks - a sentence at Level 26 - is if the Court finds that Petitioner's remaining arguments are meritorious. While unnecessary, the Court discusses Petitioner's Apprendi argument below. For the reasons below, the Court rejects it.

The Court notes that while Petitioner discusses Booker, Petitioner also clarifies in his reply papers that the "Petition is not based on Booker . . . ." (Pet.'s Reply 11.) Furthermore, Petitioner also acknowledges in his memorandum that Booker does not assist Petitioner in obtaining his sought relief. (Pet.'s Mem. 12.) See also United States v. Guzman, 404 F.3d 139, Thus, the Court does not address any arguments based upon Booker and its progeny and the related arguments based upon the ex post facto clause and due process.

Petitioner argues that the two enhancements applied to Petitioner's sentence were prohibited under the "Rule of Apprendi." (Pet.'s Mem. 11.) The "Rule of Apprendi," the Petitioner argues, forbids the Court to impose upon a defendant a sentence greater than that authorized by a jury's verdict or a guilty plea. (Id.) The Government contends that Apprendi does not apply to sentencing enhancements. (Opp. 19-20.)

The Supreme Court held that "any fact that increases the

15

penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 489, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). The Second Circuit, however, does not apply the doctrine of Apprendi to everything that affects a sentence.

In United States v. Mincey, the defendants challenged the enhancements of their sentences. See United States v. Mincey, 380 F.3d 102, 105 (2d Cir. 2004). The Mincey defendants argued that the facts upon which the sentencing court based the enhancements had to be determined by a jury beyond a reasonable doubt. See id. The Second Circuit, however, rejected this argument, claiming that the Sixth Amendment does not require "every enhancement factor that increases a Guidelines range to be pleaded and proved to a jury beyond a reasonable doubt." United States v. Mincey, 380 F.3d 102, 106 (2d Cir. 2004).

In United States v. McLeod, the Second Circuit held that Apprendi does not apply to Guidelines calculations that do not result in a sentence on a single count above the statutory maximum for that count. See United States v. McLeod, 251 F.3d 78, 82 (2d Cir. 2001). The "preponderance of the evidence standard applies to determinations of relevant conduct for purposes of ascertaining the total punishment, which may exceed the statutory maximum on a single count." Id. The "total punishment" is the punishment "determined after all relevant Guidelines' calculations have been

16

made." Id. (citing U.S.S.G. § 5G1.2(b)).

Petitioner conveniently ignores this relevant case law. Petitioner does not address these cases in either his motion or reply papers. These cases are on point. The enhancements the Court applied to Petitioner's sentence need not be based on facts found by a jury. Apprendi does not require this. Accordingly, the Court rejects Petitioner's argument based upon Apprendi.

Before the Court ends this discussion, the Court would like to make one final note regarding the relationship between Apprendi and the Supreme Court case of United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). Booker applied the doctrine of Apprendi to the federal Sentencing Guidelines. See Booker, 543 U.S. at 231-32. Booker also held that the Guidelines violated the Sixth Amendment to the extent that a maximum sentence was increased based on factual findings made by a judge. See id. at 243-44; Guzman v. United States, 404 F.3d 139, 141 (2d Cir. 2005). Further, Booker held the Guidelines were merely advisory. See Guzman, 404 F.3d at 141.

Booker, however, was decided on January 12, 2005 - approximately four months after this Court sentenced Petitioner on September 22, 2004. Thus, the law at the time was Apprendi and its progeny, which held that Apprendi did not apply to the Sentencing Guidelines and any sentencing enhancements under its regime. Booker changed all that. But Booker limited its holdings to only

17

those cases pending on direct review. See Booker, 543 U.S. at 268. The Second Circuit held that "Booker is not retroactive: it does not apply to cases on collateral review where the defendants' conviction was final as of January 12, 2005, the date that Booker issued." Guzman, 404 F.3d at 141. Booker thus does not apply to Petitioner's 2255 motion for collateral review.

Petitioner acknowledges this and specifically explains that his Petition is not based on Booker. Thus, the Court must apply the law that was in existence at the time his sentence became final, and that is the law of Apprendi, which - as explained above - simply does not assist Petitioner.

## **CONCLUSION**

Based on the reasons above, the Court DENIES Petitioner's motion to vacate his sentence. The Clerk of the Court shall mark this matter as CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York
June __4__, 2007